Pankaj S. Raval (SBN 273973)
**CARBON LAW GROUP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (323) 543-4453
Email: trademarks@carbonlg.com
ATTORNEY FOR PLAINTIFF AND COUNTER-DEFENDANT
AGRO FOODS, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| AGRO FOODS, INC., a California corporation,<br>Plaintiff,<br>v.<br>ONKAR TRADING, LLC, a Pennsylvania limited liability company; and DOES 1 to 50,<br>Defendants.<br>AND COUNTERCLAIMS. | Case No. 5:24-cv-02378-SSS (DTBx)<br><br>The Hon. Sunshine S. Sykes<br><br>**PLAINTIFF AGRO FOODS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ONKAR TRADING LLC'S MOTION FOR SUMMARY JUDGMENT**<br>**[Filed concurrently with Statement of Genuine Disputes; Evidentiary Objections; Declarations of Pankaj S. Raval and Rajiv Kumar; [Proposed] Order; and [Proposed] Order on Evidentiary Objections]**<br><br>Date: October 2, 2026<br>Time: 2:00 p.m.<br>Ctrm: 2, 2nd Floor<br><br>Trial Date: January 4, 2027 |

# TABLE OF CONTENTS

I. INTRODUCTION ................ 5

II. STATEMENT OF FACTS ................ 8

III. LEGAL STANDARD ................ 10

IV. ARGUMENT ................ 12

A. The *Sengoku* factors are genuinely disputed on Onkar's own record ................ 12

B. Onkar's evidence that Shiv owns the Mark cannot be presented in admissible form, and UMFs 10, 11, 13 and 14 fail with it ................ 19

C. Onkar's own evidence is internally inconsistent as to which entity owns the Mark ................ 21

D. There is evidence of an acknowledgment by the manufacturer ................ 22

E. The statute of frauds argument is self-defeating and does not resolve ownership ................ 23

F. Onkar is a stranger to the arrangement it asks the Court to declare unenforceable ................ 24

G. Onkar has not established fraud on the USPTO as a matter of law ................ 25

H. The recorded assignment conveys the Mark and its goodwill, and the forgery claim presents a credibility dispute that cannot be resolved on this motion ................ 28

I. Onkar has not established any chain of priority or privity with the alleged senior user ................ 31

J. The exceptional-case request fails on this record ................ 34

V. CONCLUSION ................ 35

## TABLE OF AUTHORITIES

***Cases***

*578539 B.C., Ltd. v. Kortz*, 2015 WL 12670488 (C.D. Cal. Apr. 10, 2015) ...... 33

*Abeyta v. Superior Court*, 17 Cal. App. 4th 1037 (1993) ...... 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...... 11

*Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001) ...... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...... 10

*Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996) ...... 33

*Covertech Fabricating, Inc. v. TVM Building Products, Inc.*, 855 F.3d 163 (3d Cir. 2017) ...... 12

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988) ...... 24

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003) ...... 19

*Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088 (9th Cir. 2004) ...... 13

*In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009) ...... 25

*March v. Mortgage Elec. Registration Sys., Inc.*, 659 F. App’x 383 (9th Cir. 2016) ...... 30

*McCue v. Deppert*, 21 N.J. Super. 591 (1952) ...... 25

*Park ’N Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508 (9th Cir. 1986) ...... 33

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) ...... 19

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996) ...... 5

*SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (en banc) ...... 34

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) ...... 16

*Watec Co. v. Liu*, 403 F.3d 645 (9th Cir. 2005) ...... 12

*Zimmerman v. Bank of Am.*, 191 Cal. App. 2d 55 (1961) ...... 24

*Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010) ...... 11

***Statutes and Rules***

15 U.S.C. § 1057(b) ...... 6

15 U.S.C. § 1060(a)(3) ...... 28

15 U.S.C. § 1115(a) ...... 6

15 U.S.C. § 1117(a) ...... 34

15 U.S.C. § 4402(a) ...... 17

21 U.S.C. § 387d(a)(3) ...... 16

Cal. Civ. Code § 1614 ...... 30

Cal. Civ. Code § 1615 ...... 30

Cal. Civ. Code § 1624(a)(1) ...... 23

Cal. Civ. Code § 1689 ...... 30

Fed. R. Civ. P. 56(a) ...... 10

Fed. R. Civ. P. 56(c)(2) ...... 11

Fed. R. Evid. 602 ...... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Onkar Trading LLC ("Onkar") asks this Court to find, as undisputed fact, that a foreign entity which has never appeared in this action, never been deposed, and never submitted a word of sworn testimony owns the UDTA PANCHHI mark in the United States, notwithstanding Agro's federal registration. On that premise, Onkar asks the Court to dismiss every claim, cancel Registration No. 5,197,007 for UDTA PANCHHI ("the Mark"), and declare this an exceptional case. The premise rests solely on the declaration of Onkar's own owner and on a single undated letter he cannot authenticate.

The motion asks the Court to apply *Sengoku* to a case *Sengoku* does not describe. *Sengoku* allocated ownership between a manufacturer and its own exclusive distributor — two parties to the relationship being adjudicated, both before the court. Onkar is neither. It is a purchaser asking to litigate the rights of an absent

manufacturer whose agreements it has never seen, against a registrant whose ownership the Lanham Act presumes.

Agro Foods, Inc. is the registrant of the Mark. Registration is prima facie evidence of the validity of the Mark, of Agro's ownership, and of Agro's exclusive right to use it in commerce. 15 U.S.C. §§ 1057(b), 1115(a). Onkar is the challenger and must overcome that presumption by a preponderance of the evidence. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219–20 (9th Cir. 1996). On summary judgment, Onkar must do more: it must establish that no reasonable trier of fact could find for Agro. Onkar fails to meet this elevated burden.

Indeed, the motion fails on the record that Onkar itself submitted. Five examples frame this brief.

First, Onkar's only evidence that "Shiv" owns the Mark is the declaration of Sunny Kwatra — Onkar's own principal, a competing importer of the same goods — together with Exhibits O and P. There is no declaration from Shiv Tobacco Company, from Archit Industries, or from any individual associated with either. Uncontroverted Material Facts ("UMF") 10, 11, 13 and 14 depend on that declaration and those two exhibits for everything they assert about who owns the Mark and who may use it. Those facts cannot be presented in admissible form, and Onkar's entire ownership theory and its derivative-rights theory fail with them.

Second, Onkar's brief identifies three alleged claimants to the Mark. The packaging Onkar relies upon states that Archit Industries owns a trademark and that Shiv Tobacco Company manufactures the goods. The European registration Onkar relies upon names Vinod Kumar, a natural person. Onkar attempts to reconcile this by defining "Shiv" to mean Shiv Tobacco and Archit "collectively." Mot. at 1. A defined term in a brief is an argument. It is not evidence, and it cannot merge three legal persons into one.

Third, Onkar tells the Court that Evolution Enterprises Holdings, Inc.'s ("Evolution") designee "admitted that Shiv was using the Udta Panchhi name in India as early as 2010." UMF 17. Asked when Shiv came up with the name, the witness said "I don't know the exact date, no," and asked "Before 2010?" answered "That, I don't know. That could be too early." Evolution Dep. 56:1–8.

Fourth, Onkar tells the Court that the exclusivity arrangement ran to Rajiv Kumar personally and that neither Agro nor Evolution was a party. UMFs 20, 25, 26. Onkar's own examination of Evolution's designee produced the opposite: any such agreement "would be between Evolution and Shiv," and Mr. Kumar "was Evolution's agent to the extent that he had any contact with Shiv." Evolution Dep. 42:7–19.

Fifth, Onkar tells the Court that it "did not know of any federal registration of the Mark until it received service of Agro's complaint." UMF 9. Onkar's own Exhibit H contradicts this statement. Exhibit H is a June 1, 2022 letter, mailed to Onkar's address by priority mail, that identifies the registration by serial number and effective date and demands that Onkar stop selling the goods.

Summary judgment is not the occasion to resolve any conflicts regarding material facts of any kind. The motion should be denied.

## II. STATEMENT OF FACTS

Agro incorporates its concurrently filed Statement of Genuine Disputes.

### A. Agro and its predecessor are the United States importer of record and the party responsible for United States regulatory compliance.

Evolution registered the Mark and imported and sold the goods in the United States from 2016 to 2022. Evolution Dep. 34:20–22. Evolution assigned the Mark and its goodwill to Agro in 2022 and Agro thereafter has sold goods bearing the Mark.

Before the goods could be sold here, Agro and Evolution added to the packaging the United States statutory warning, the tax class designation, and the weight declaration. Agro Dep. 124:17–24; Kumar Decl. ¶ 6. Mr. Kumar approved

the packaging Shiv created, and the packaging was not finalized without Evolution's or Agro's approval. Agro Dep. 120:10–18; Kumar Decl. ¶ 6.

Agro can direct a change in formulation and has tested the goods against its own constituent specifications. Agro Dep. 127:8–25; Evolution Dep. 12:18–22; Kumar Decl. ¶ 5.

Between 2017 and July 2022, Evolution invoiced goods bearing the Mark to approximately sixty-three United States distributors, in a series of several hundred invoices. Raval Decl. ¶ 10, Ex. 6. Among those customers was H & A International LLC, which purchased goods bearing the Mark from Evolution on October 27, 2017. *Id.* (EEH000215). Agro's own invoices show the same trade continuing after the transfer to distributors in California, Virginia and Pennsylvania. Raval Decl. ¶ 11, Ex. 7.

The instrument by which Evolution transferred the Mark to Agro was executed on May 4, 2022, and recorded with the United States Patent and Trademark Office on May 28, 2022, at Reel 007787, Frame 0764. Raval Decl. ¶¶ 6, 9, Exs. 2, 5.

**B. Evolution and Agro asserted and enforced the registration against Onkar in 2022.**

On June 1, 2022, counsel for Evolution sent Onkar Trading LLC a letter by United States priority mail demanding that Onkar cease importing and selling goods bearing the Mark. The letter states that the Mark "became effective on May 2, 2017, serial number 86960388," and that "no party has the legal right to use the name without the specific written permission of Evolution." Williams Decl., Ex. H (AGRO000032). It also refers to "Evolution's exclusivity contract with the manufacturer." *Id.* (AGRO000033).

**C. Evolution's designee testified that Agro has authority to use the Mark.**

Onkar's motion is built on the proposition that Evolution "categorically denies" any transfer to Agro. UMF 33. The same witness testified that Agro has "permission from Evolution to sell UDTA PANCHHI," Evolution Dep. 31:24–32:1; that the arrangement is verbal and of indefinite duration, *id.* at 33:12–23; that it is "limited to the United States of where the trademark is registered," *id.* at 33:24–34:1; and that "[i]t was understood only that Agro Foods could use the Mark, and that was it," *id.* at 34:14–15. He also testified that Evolution and Agro divided the brands between them in a business separation "between 2022 and 2023." *Id.* at 54:23–55:3.

## III. LEGAL STANDARD

Summary judgment is proper only where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). The moving party bears the initial burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court does not weigh evidence or make credibility determinations, and it draws all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When the evidence would permit a reasonable trier of fact to find for the non-movant, summary judgment must be denied. *Id.* at 248.

A party may object that material cited to support a fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The burden of showing that cited material may be presented in an admissible form rests with its proponent. Facts that are not supported by admissible evidence cannot carry a motion.

Registration is prima facie evidence of the validity of the mark, of the registrant's ownership, and of the registrant's exclusive right to use the mark in commerce. 15 U.S.C. §§ 1057(b), 1115(a). Federal registration accordingly "entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark," and "the burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d

1108, 1113 (9th Cir. 2010). *Sengoku* states the same rule for ownership: "the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." 96 F.3d at 1219–20. The presumption is not defeated by argument; it yields only to "law, undisputed facts, or a combination thereof," and "the burden on the defendant necessary to overcome that presumption at summary judgment is heavy." *Zobmondo*, 602 F.3d at 1113.

## IV. ARGUMENT

### A. The *Sengoku* factors are genuinely disputed on Onkar's own record.

Onkar's reliance on *Sengoku* fails before the factors are reached. *Sengoku* does not begin with a presumption; it begins with the parties' agreement. "When disputes arise between a manufacturer and distributor, courts will look first to any agreement between the parties regarding trademark rights," and only "in the absence of an agreement between the parties" is the manufacturer presumed to own the mark. 96 F.3d at 1220–21. Onkar was not a party to any arrangement between Shiv and Evolution. It offers no competent evidence of what that arrangement was or was not, because it has none. Onkar has not established the absence of such an agreement on this record, and without that showing it does not reach the presumption on which its motion depends.

Where the existence of an agreement disposing of rights in a mark is genuinely disputed, that question is "properly a question for the jury." *Watec Co. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005).

Onkar's out-of-circuit framework case does not carry it further. *Covertech Fabricating, Inc. v. TVM Building Products, Inc.*, 855 F.3d 163 (3d Cir. 2017), neither cites nor applies the registration presumptions of 15 U.S.C. §§ 1057(b) and 1115(a), and the distributor's registration was cancelled only after a week-long bench trial produced clear and convincing evidence of fraud and express findings on witness credibility. *Id.* at 171–72. Neither a trial nor a credibility finding is available on this motion.

*Sengoku* addresses a dispute between a manufacturer and its distributor over ownership of a mark on goods the manufacturer produces. In that setting courts consider which party invented and first affixed the mark, which party's name appeared with it, which party maintained the quality and uniformity of the product, and with which party the public identified the product and to whom purchasers made complaints, along with which party possesses the goodwill and which party the public believes stands behind the product. *Sengoku*, 96 F.3d at 1220.

***1. Priority in the United States is the only priority that matters, and Onkar offers no evidence of it.***

It is "axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku*, 96 F.3d at 1219. The use that counts is use here. "[P]riority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world." *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1093 (9th Cir. 2004). Trademark rights "exist in each country solely according to that country's statutory scheme," and "[e]arlier use in another country usually just does not count." *Id.*

*Grupo Gigante* recognizes a narrow exception for a foreign mark well known in the relevant American market. To invoke it a party must satisfy the secondary meaning test and further establish that "a substantial percentage of consumers in the relevant American market is familiar with the foreign mark." *Id.* at 1098.

Onkar has not attempted to show the Mark is well known in the United States. Its evidence of reputation is one sentence from its own principal, asserting the product is "a known and beloved brand to tobacco consumers in India, and throughout the worldwide Indian diaspora." Kwatra Decl. ¶ 3. That is not about the relevant American market. Onkar offers no survey, no United States consumer

testimony, and no evidence of recognition in that market before Evolution began selling the goods here.

*Sengoku* itself identifies what a challenger must show. A non-registrant rebuts the registrant's presumption of ownership by establishing "that the registrant had not established valid ownership rights in the mark at the time of registration — in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Sengoku*, 96 F.3d at 1220. The commerce that matters is commerce in the United States. *Grupo Gigante*, 391 F.3d at 1093. In *Sengoku*, the manufacturer made that showing: its mark had been affixed to goods that reached the United States market before the distributor registered. Onkar has made no comparable showing here, and it has not tried. Its evidence concerns India and Europe.

That principle disposes of most of Onkar's showing. UMFs 10 and 11 concern availability and reputation in India, UMF 16 concerns a European registration and UMF 17 concerns when a name was conceived in India. None of these UMFs concern use in the United States. Onkar identifies no evidence that any party sold goods bearing the Mark in this country before Evolution did.

Onkar's remaining citation is testimony that Mr. Kumar could not swear to what others may have done. Even there he added that "in India, no one had the right,"

and as to sales in America before 2007, "I doubt, but I cannot challenge." Agro Dep. 93:7–14. UMF 15 recasts that as an admission of ignorance.

***2. Control over quality and uniformity.***

This factor is disputed. Mr. Kumar testified that Agro has authority to change the product's formulation and could direct Shiv to change it or stop working with Shiv entirely. Agro Dep. 127:8–25. Evolution's designee testified that Evolution "digged out some records that show that we were testing our products with laboratories to make sure that they stayed within our specified HPHC." Evolution Dep. 12:18–22. Because the goods are a tobacco product, testing of that kind bears on control: the importer must submit a listing of harmful and potentially harmful constituents by brand and by quantity. 21 U.S.C. § 387d(a)(3). Testing against its own specifications shows Evolution was positioned to meet that obligation. Onkar's UMFs 41 and 42 do not account for either. Mr. Kumar declares that he could direct Shiv to change the formulation and could have the product manufactured elsewhere, and that when a distributor or retailer has a problem with the product, that person contacts Agro and he raises it with the manufacturer. Kumar Decl. ¶¶ 5, 7.

Onkar's implicit premise is that control counts only if it is documented in a formal inspection regime. That is not the law. The Ninth Circuit has sustained a trademark owner's control where the license was oral and the owner relied in part

on a licensee it had worked with for years, because the owner also retained and exercised real indicia of control over the goods. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017–18 (9th Cir. 1985). The burden on that issue is not Agro's. Because a finding of insufficient control "essentially works a forfeiture, a person who asserts insufficient control must meet a high burden of proof." *Id.* at 1017. Onkar has not met its burden. At a minimum, whether the control Agro exercised was adequate is a question of fact on this record, not a matter Onkar has established as undisputed.

***3. The party's name and contributions on the goods.***

Onkar concedes that Agro and Evolution contributed elements to the packaging, characterizing them as "non-substantive and regulatory." UMF 39. The contributions were the United States statutory warning, the tax class, and the weight declaration. Agro Dep. 124:17–24; Kumar Decl. ¶ 6. Whether they were "non-substantive" is Onkar's characterization, not an undisputed fact. To the contrary, these goods are heavily regulated: it is unlawful to import smokeless tobacco for sale in the United States unless the package bears one of the statutory warnings. 15 U.S.C. § 4402(a). The more significant evidence on this factor is not the labels themselves but the control they reflect. Asked who designed the appearance of the Mark on the packaging, Mr. Kumar testified: "The manufacturer gave me the design. I approved.

I felt okay, but whatever changes needed that time, I requested them to change, and they did." Agro Dep. 123:16–18. Changes requested and changes made is the exercise of control, not the appearance of it. He further testified that he had the opportunity to approve the packaging Shiv created and approved its appearance, *id.* at 120:10–18, and declares that packaging was not finalized without Evolution's or Agro's approval, Kumar Decl. ¶ 6. The United States package Agro produced shows the result. Raval Decl. ¶ 11, Ex. 7 (AGRO000076).

***4. The purchasers to whom the product is sold.***

UMF 38 asks what an end consumer could learn. That is not the correct universe. Neither Agro nor Evolution sells to consumers; both sell to a limited channel of distributors. Agro Dep. 126:22–127:4. Asked what Evolution did to identify itself as the source, its designee testified: "That we were the exclusive importer, distributor, trademark owner of the brand, and where you could only purchase this product was from Evolution." Evolution Dep. 27:18–23. He explained that the distributors "are limited in number" and that "through that limited distribution channel is how they would know to purchase the product through us, and that we were the authentic source." *Id.* at 28:1–6. Mr. Kumar declares to the same effect: the distributors Agro deals with are few in number, have dealt with Agro for years, and know that the authentic United States supply of this product

comes from Agro. Kumar Decl. ¶ 7. The documents bear this out. Agro's distributor list identifies seventeen United States distributors by name, address and license number. Raval Decl. ¶ 11, Ex. 7 (AGRO000055–57). Evolution's invoices show the same channel before the transfer. *Id.* ¶ 10, Ex. 6.

Two additional points need to be stated. First, Onkar asks the Court to find as undisputed with which party the consuming public identifies the product, offering no survey, no consumer testimony and no market evidence — only the say-so of its own conflicted principal. And its assertion that "Shiv has never treated Mr. Rajiv, or Evolution, or Agro as anything other than a non-exclusive distributor," Mot. at 13, rests on UMFs 27 through 32, which say nothing of the kind; they concern text messages, the absence of litigation against the manufacturer, and the appearance of the goods.

**B. Onkar's evidence that Shiv owns the Mark cannot be presented in admissible form, and UMFs 10, 11, 13 and 14 fail with it.**

In addition to Agro having priority in the United States, Onkar has not established with undisputed facts who owns the mark elsewhere in the world, including India. Agro does not contend that Onkar's materials are excludable because of the form in which they were submitted. At summary judgment, a court does "not focus on the admissibility of the evidence's form," but "instead focus[es]

on the admissibility of its contents." *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (*quoting Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). That rule is not a dispensation from Rule 56 itself: a declaration must still rest on personal knowledge and set forth facts that would be admissible, and one that does neither may not be considered. *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). Agro's objections go to contents, competence and foundation — not to form.

Onkar's showing that Shiv owns the Mark begins and ends with the Kwatra declaration. Mr. Kwatra is the head of a competing company and a Defendant in this action, not a witness to any fact about Shiv's internal dealings with Agro. He offers no basis for personal knowledge of what was on Indian shelves in 2008, of the relationship among Shiv Tobacco Company, Archit Industries, and Vinod Kumar, or of who owns any intellectual property. Fed. R. Evid. 602. The UDTA PANCHHI product packaging does not indicate that Shiv owns the Mark.

Exhibit O is an image said to depict the product "as it appears on Indian shelves, and has appeared since 2008." Kwatra Decl. ¶ 2. The declaration does not say when the image was made, by whom, or where it was obtained. Agro does not object to the image as a depiction of a package at some point in time somewhere in the world. It objects to the use Onkar makes of it — as proof that a particular entity

owned the Mark and of what was on Indian shelves in 2008. For those purposes, Onkar needed a competent witness. It has offered none.

Exhibit P is the document on which Onkar's derivative-rights theory depends, and Onkar identifies no competent witness through whom its contents could reach a factfinder. Mr. Kwatra did not execute it, did not witness its execution, does not identify its signatory, and does not establish that the signatory had authority to grant anything. No witness from Shiv Tobacco Company or Archit Industries has appeared. Its facial irregularities confirm rather than cure the gap: it bears no date; it spells the brand "UDTA PANCHI" rather than the registered "UDTA PANCHHI"; it is addressed to "Onkar Trading Co. LLC," not the defendant; and it is subscribed only "Prop."

Agro's concurrently filed evidentiary objections address these materials. If they are sustained, the propositions underlying UMFs 10, 11, 13 and 14 lack competent support, and Onkar is left without admissible evidence that any identified entity (other than Agro) owns the Mark or that Onkar holds authority from its owner.

### C. Onkar's own evidence is internally inconsistent as to which entity owns the Mark.

Onkar's brief defines "Shiv" to mean Shiv Tobacco Company and Archit Industries "collectively." Mot. 1:6–9. The record does not permit that consolidation.

By Onkar's own description, the packaging it relies upon states that Archit Industries owns a trademark and that Shiv Tobacco Company is the manufacturer. Mot. 5:12–14. Two roles, two entities, and no evidence of the relationship between them. The European registration Onkar relies upon names Vinod Kumar, an individual. UMF 16. Rajiv Kumar testified that the person he dealt with was Vineet Kumar. Agro Dep. 79:17–21.

Onkar's own witness widened the gap. Mr. Kumar testified that Shiv Tobacco was "doing marketing of their product, Archit, through our brand," and that Shiv and Archit placed their own telephone number and email address on the packaging to promote Archit's separate brand. Agro Dep. 118:5–6, 118:6–14.

Agro does not contend that this inconsistency alone entitles it to defeat summary judgment. It contends that the inconsistency is a conflict in the evidence a trier of fact must resolve. The presumption Onkar invokes runs to a manufacturer, and its derivative-rights theory requires privity with whoever actually owns the Mark. Onkar has not identified that party with admissible evidence.

**D. There is evidence of an acknowledgment by the manufacturer.**

*Sengoku* asks first whether the parties had "an agreement or acknowledgment" concerning ownership. 96 F.3d at 1220. Although Onkar incorrectly treats the

inquiry as though it requires a signed contract, the record contains evidence of an acknowledgment.

Mr. Kumar testified that he told the manufacturer it could not supply the brand to anyone in the United States "because this is registered in our name," that "he agreed that he will not give to anyone ever in future," and that Vineet Kumar "clearly told that 'This is your trademark.'" Agro Dep. 83:15–23. He testified that the goods were manufactured "on our behalf for us and only for us." *Id.* at 83:23.

Onkar's answer is Exhibit K, an October 30, 2025 email from Agro's prior counsel, which Onkar's separate statement describes as "admitting that no document reflecting a written exclusivity agreement exists." UMF 18. Counsel wrote only that "my understanding is that it does not exist," adding that "[d]iscovery is continuing" and that he had not spoken with the attorney who wrote the letter. Williams Decl., Ex. K. In any event, whether a written agreement exists is immaterial: Agro does not rely on one.

**E. The statute of frauds argument is self-defeating and does not resolve ownership.**

Onkar's statute of frauds argument defeats itself. Section 1624(a)(1) reaches only an agreement that "by its terms is not to be performed within a year from the making thereof." The test is whether the agreement can be completed within a year.

Onkar's argument is that the arrangement was terminable upon Mr. Kumar's election and therefore cannot support the permanent rights Agro claims. Mot. at 13. In pressing that argument, Onkar describes an agreement that may be terminated at any moment, including within a year of its making. An agreement of that description is not one that by its terms cannot be performed within a year. Onkar's own UMF 23 states that Mr. Kumar "could terminate Shiv's authority to manufacture Udta Panchhi at any time for any reason or no reason." The underlying testimony is to the same effect: "We have the right to cancel any day, even tonight. . . . I have the sole right. I can cancel any time." Agro Dep. 83:5–11.

California authority is consistent: where a condition that would terminate the agreement may occur within a year, the agreement is capable of performance within a year and falls outside the statute. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 673–74 (1988); *Abeyta v. Superior Court*, 17 Cal. App. 4th 1037, 1044 (1993). Both arose in the employment context, and the reach of the one-year provision here is for the Court; the point is that Onkar has not established the defense as a matter of law.

Independently, the defense does not reach the question before the Court. The statute of frauds governs enforcement of a contract; it does not erase the evidentiary significance of how the parties actually dealt with one another, which is what the *Sengoku* acknowledgment inquiry examines.

### F. Onkar is a stranger to the arrangement it asks the Court to declare unenforceable.

Onkar's uncertainty defense asks the Court to hold that an oral arrangement between Mr. Kumar and the manufacturer is too indefinite to be enforced. Onkar was not a party to that arrangement, is not in privity with either party to it, and does not claim to be a third-party beneficiary of it. California authority is instructive. In *Zimmerman v. Bank of Am.*, a defendant accused of inducing the breach of an oral contract could not invoke the statute of frauds to defeat the claim: the statute "was enacted for the protection of the party sought to be charged" and "is personal and not available to strangers to the agreement." 191 Cal. App. 2d 55, 60 (1961) (*quoting McCue v. Deppert*, 21 N.J. Super. 591 (1952)). *Zimmerman* arose in the interference context, on an issue the court said no California case had precisely addressed, so Agro offers its reasoning as persuasive. Onkar identifies no authority permitting a stranger to an agreement to invoke defenses to its formation in order to defeat a third party's trademark rights.

Onkar also assumes without analysis that California law governs an arrangement alleged to have been made in India between a California resident and an Indian manufacturer. Agro notes only that Onkar, as movant, has not established the premise on which its own defense depends.

### G. Onkar has not established fraud on the USPTO as a matter of law.

Fraud in the procurement of a registration must be proven by clear and convincing evidence. *In re Bose Corp.*, 580 F.3d 1240, 1243–45 (Fed. Cir. 2009). Deceptive intent may be inferred from indirect and circumstantial evidence, but "such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id.* at 1245. Equating what a party "should have known" with subjective intent improperly reduces the standard to negligence. *Id.* And because the standard is heightened, the Court must ask whether a reasonable trier of fact could find clear and convincing evidence on this record. *Anderson*, 477 U.S. at 254.

Onkar offers no evidence from which deceptive intent is compelled, much less shown by clear and convincing evidence, and submits no declaration from any Evolution witness. Its argument is that Evolution "necessarily falsely represented" ownership to the USPTO. Mot. at 18. That is an inference drawn from the absence of documents, which is what *Bose* forecloses.

The record affirmatively contradicts the inference, and a good-faith belief in ownership is fatal to the intent element. Asked directly whether he knew Shiv "already was manufacturing a product bearing the name UDTA PANCHHI," Evolution's designee — Onkar's own deponent — answered: "No." Evolution Dep.

40:25–41:2. He testified that Evolution selected Shiv because of its production history, not because Shiv had an existing brand. *Id.* at 40:20–24. Mr. Kumar testified that the manufacturer told him "This is your trademark," Agro Dep. 83:20–21, and declares that he did not know, when the application was filed or at any time before this lawsuit, that Shiv was already manufacturing or selling a product under the name, Kumar Decl. ¶ 4. Evolution engaged a trademark attorney to prepare and file the application. Evolution Dep. 8:15–16. A trier of fact could readily find that Evolution believed in good faith that it owned the Mark, and that finding would end the inquiry.

Onkar's fallback is the European registration. It argues that because Mr. Kumar was aware of a European filing, he must have known that Shiv owned rights here. The inference does not follow. The European registration names Vinod Kumar, a natural person — not Shiv Tobacco Company and not Archit Industries. UMF 16. Awareness that an individual had filed in Europe is not knowledge that Evolution's ownership representation was false, and it is not evidence of an intent to deceive the examining attorney. Even if Shiv was selling a product under that name in India or elsewhere in the world, that is irrelevant to trademark rights in the United States. *Grupo Gigante*, 391 F.3d at 1093. More fundamentally, Onkar's argument is that Mr. Kumar should have drawn a conclusion. *Bose* forecloses precisely that move: equating what a party "should have known" with subjective intent to deceive

"erroneously lowers the fraud standard to a simple negligence standard." 580 F.3d at 1245.

Finally, the Trademark Manual of Examining Procedure supplies no element of fraud, and non-compliance with a guideline is not clear and convincing evidence of intent to deceive.

**H. The recorded assignment conveys the Mark and its goodwill, and the forgery claim presents a credibility dispute that cannot be resolved on this motion.**

Agro's ownership rests on a written assignment recorded with the United States Patent and Trademark Office. The instrument was executed on May 4, 2022 and recorded on May 28, 2022 at Reel 007787, Frame 0764. Raval Decl. ¶¶ 6, 9, Exs. 2, 5. It conveys Evolution's entire interest in the Mark "together with . . . the goodwill of the business relations to the Trademark and to the wares or services associated with it." *Id.*, Ex. 5 (EEH000069). Where the prescribed information reporting an assignment is recorded, "the record shall be prima facie evidence of execution." 15 U.S.C. § 1060(a)(3). Onkar does not dispute that the assignment was recorded. UMF 2. Evolution has never challenged the assignment. Recordation is not conclusive of validity, but it is affirmative evidence of execution that Onkar must overcome.

Onkar asks the Court to accept Mr. Bhasin's forgery testimony as undisputed fact. UMF 33. Within the same passage Onkar cites, the witness testified as follows: "Q. Might someone at Evolution have signed this on your behalf? A. Yes, sir." Evolution Dep. 18:25–19:2. He also testified that he was not familiar with the document at all. *Id.* at 18:9–10. His opinion rests on comparing a signature, not on knowledge of the transaction. Resolving whether the instrument was executed with authority requires a credibility determination, which is not available on summary judgment. *Anderson*, 477 U.S. at 255.

Mr. Bhasin is also not a handwriting expert, and he does not claim to be. His characterization of the instrument as a forgery is lay opinion on the central disputed question in this part of the motion, and Agro's concurrently filed Evidentiary Objection No. 9 addresses it. Even if received, it is the opinion of one interested witness, contradicted by his own testimony moments earlier, and it cannot be weighed against Agro's evidence at this stage.

The same witness testified that Agro has permission from Evolution to sell goods bearing the Mark in the United States and that "[i]t was understood only that Agro Foods could use the Mark, and that was it." Evolution Dep. 31:24–32:1, 34:14–15. Agro does not offer that testimony as the source of its rights, and does not contend that it holds the Mark as a licensee. Its significance is narrower: the witness

who tells this Court that Evolution never transferred anything also acknowledged that Agro sells these goods with Evolution's knowledge and assent. Those two accounts cannot both be credited, and choosing between them is not available on summary judgment. *Anderson*, 477 U.S. at 255.

Evolution's conduct after the transfer tacitly confirms a valid assignment and not Onkar's theory. On this record, Evolution treated Agro as free to sell the goods bearing the Mark, described the arrangement as limited to the United States where the registration sits, and divided the brands with Agro in a business separation. Evolution Dep. 33:24–34:1, 34:14–15, 54:23–55:3. Agro does not argue acquiescence, which would require a showing that this record does not contain. The point is narrower: the conduct Onkar must explain away is Evolution's own.

Onkar's consideration argument fares no better, and it is not Onkar's to make. Onkar is a stranger to the assignment — not a party, not in privity, and not a third-party beneficiary — and cannot challenge the sufficiency of the consideration it recites. *March v. Mortgage Elec. Registration Sys., Inc.*, 659 F. App'x 383 (9th Cir. 2016); *see Zimmerman*, 191 Cal. App. 2d at 60–61; Section IV.F. Neither Evolution nor Agro contends otherwise. Nor would non-payment void the instrument: a written instrument is presumptive evidence of consideration, and the burden of showing want of consideration lies with the party seeking to avoid it. Cal. Civ. Code §§ 1614,

1615. UMF 34 establishes only that the recited dollar went unpaid — a failure of consideration, which permits "[a] party to a contract" to rescind, *id.* § 1689(b), not a stranger to declare it void. The instrument in any event conveys the mark together with its goodwill rather than for the recited dollar alone. Raval Decl. ¶ 9, Ex. 5. What actually passed between these parties is a disputed question with documentary support on Agro's side: Evolution's designee testified that Evolution and Agro divided the brands between them in a business separation "between 2022 and 2023," Evolution Dep. 54:23–55:3; Evolution invoiced Agro $187,115.00 on April 1, 2022 and $157,675.00 on July 18, 2022, Raval Decl. ¶ 10, Ex. 6 (EEH000796, EEH000798); and Mr. Kumar declares that the division of brands, and not the recited dollar, is what the parties exchanged, Kumar Decl. ¶ 8.

**I. Onkar has not established any chain of priority or privity with the alleged senior user.**

Onkar contends that it may rely on the rights of an absent manufacturer because it purchases from that manufacturer with permission. Mot. at 16–17. The theory has a threshold defect that no amount of permission cures. A party who claims through another can claim no more than the rights that other party holds. Before Onkar may borrow a senior user's priority, that senior user must first have acquired priority in the United States, because "priority of trademark rights in the United

States depends solely upon priority of use in the United States, not on priority of use anywhere in the world." *Grupo Gigante*, 391 F.3d at 1093. Onkar therefore must establish three things: who the senior user is, what relationship permits Onkar to invoke that party's priority, and that the party actually held United States priority to convey. Onkar has established none of them.

First, Onkar has not identified the senior user. Its own evidence points to Shiv Tobacco Company, to Archit Industries, and to Vinod Kumar. *See* Section IV.C. A party cannot stand in the shoes of a senior user it has not identified.

Second, Onkar has not established any relationship that would permit it to invoke another party's priority. Onkar is a purchaser and importer. It does not claim common ownership with any of the candidates, or succession, or assignment, or any other relationship of substantial identity. Permission to buy and resell goods is not the equivalent of the priority Onkar seeks to borrow. The one shipment Onkar has documented was not invoiced or exported to it by Shiv: the commercial invoice and packing list Onkar produced show the goods invoiced and exported to Onkar by JKS Trader of Zirakpur, Punjab, on August 14, 2021. Raval Decl. ¶ 12, Ex. 8 (ONKAR 000006–000008). That document does not establish who manufactured the goods, and Agro does not suggest otherwise. It does show that Onkar's immediate

counterparty was an intermediary rather than the party whose priority it asks to borrow — a gap Onkar never closes.

The rule Onkar runs against is settled. "[A] third party's prior use of a trademark is not a defense in an infringement action." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996). The narrow exception is privity, and Onkar's own authority shows what privity demands. In *578539 B.C., Ltd. v. Kortz*, the defendant argued that the senior user had given him "permission to use the marks"; the court struck the defense and dismissed the counterclaim because he did "not assert that [the senior user] has licensed him to do so or that it has assigned its rights in the marks to him." 2015 WL 12670488, at *14–15 (C.D. Cal. Apr. 10, 2015). This Circuit has found no privity even between corporations under common ownership. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986). Onkar offers a purchase order.

Third, the only bridge Onkar offers is Exhibit P, and on this record it establishes nothing. It does not show who signed it, whether that person had authority, when it was signed, which entity granted rights, or whether that entity held any priority in the United States to grant. *See* Section IV.B. Neither of the two decisions Onkar cites for its derivative-rights theory binds this Court — one is the unreported decision of this district discussed above, the other a decision of the

Eastern District of New York — and neither involved a non-movant holding a federal registration.

**J. The exceptional-case request fails on this record.**

Fees under 15 U.S.C. § 1117(a) are available only to a prevailing party. Onkar has not prevailed, and the request should be denied.

Should the Court reach the question, the inquiry is the totality of the circumstances, guided by the non-exclusive factors of "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam). Each factor points away from such a finding and a fee award here.

Frivolousness. Agro sued to enforce a federal registration that issued in 2017, remains on the Principal Register, and which it has paid counsel to maintain. 15 U.S.C. §§ 1057(b), 1115(a); Raval Decl. ¶ 11, Ex. 7 (AGRO000070). That history weighs against a finding of frivolousness.

Motivation. Agro's enforcement predates this litigation: a written demand identifying the registration went to Onkar on June 1, 2022. Williams Decl., Ex. H (AGRO000032). That likewise weighs against an inference of improper motive.

Objective unreasonableness. A case in which the movant's separate statement overstates the testimony it cites, and its own exhibit contradicts one of its asserted facts, *see* UMF 9 and Williams Decl., Ex. H, does not stand out for the unreasonableness of the non-movant's position.

Compensation and deterrence. Agro has participated in discovery, produced the documents Onkar's own motion relies upon, and presented its principal for deposition. Onkar identifies no conduct a fee award would discourage and no expense beyond ordinary contested litigation. This Court has already declined to award Onkar its expenses once, finding that "an award of expenses is not warranted, as it appears the parties failed to adequately meet and confer . . . ." Dkt. No. 70 at 1.

One additional point bears mention. Onkar's premise is that the manufacturer owns the Mark. Yet no representative of that manufacturer has appeared in this action, submitted a declaration, or been deposed, and Onkar offers no evidence that the manufacturer has ever asserted a claim to the Mark in the United States. Enforcing a registration that its alleged true owner has never once challenged, claimed, or objected to is not unreasonable litigation conduct.

## V. CONCLUSION

For the reasons stated above, Agro respectfully requests that the Court deny Onkar's motion in its entirety, deny judgment on the counterclaim for cancellation, and deny the request for a finding that this is an exceptional case.

Dated: August 28, 2026

CARBON LAW GROUP, P.C.

By: /s/ Pankaj S. Raval
Pankaj S. Raval
Attorneys for Plaintiff and
Counter-Defendant
AGRO FOODS, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff and Counter-Defendant Agro Foods, Inc., certifies that this brief contains 6,984 words, which complies with the 7,000-word limit set by L.R. 11-6.1. This certificate is made pursuant to L.R. 11-6.2.

The count was made using the word-count function of the word-processing program used to prepare this brief and excludes the caption, the table of contents, the table of authorities, the signature block, and this certificate.

Dated: August 28, 2026

CARBON LAW GROUP, P.C.

By: /s/ Pankaj S. Raval

Pankaj S. Raval

Attorneys for Plaintiff and Counter-Defendant AGRO FOODS, INC.